UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Master File No. 00-1334-MD-MORENO**
**Tag-Along Case No. 03-21266-CIV-MORENO**

IN RE:  MANAGED CARE LITIGATION
_____

AMERICAN DENTAL ASSOCIATION, in an
associational capacity on behalf of its members,
JOHN MILGRAM, D.D.S., SCOTT A. TRAPP,
D.D.S., and BYRON DESBORDES, individually
and on behalf of all others similarly situated,

       Plaintiffs,

vs.

CIGNA CORP., CONNECTICUT GENERAL
LIFE INS. CO., CIGNA DENTAL HEALTH,
INC., METLIFE, INC., METROPOLITAN LIFE
INSURANCE COMPANY, and MUTUAL OF
OMAHA INSURANCE COMPANY,

       Defendants.
_____/

## ORDER GRANTING MOTION TO DISMISS

THIS CAUSE came before the Court upon the Defendants' Joint Motion to Dismiss the

Second Amended Class Action Complaint **(D.E. No. 120)**, filed on **June 6, 2008**.

THE COURT has considered the motion, response, the reply and the pertinent portions of

the record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that the motion is GRANTED.  For the reasons set forth below, Counts I

through IV and Count VI of the Plaintiffs' Second Amended Complaint are dismissed without

prejudice to refile in conformance with this Order by **February 26, 2009**.  Moreover, the

Defendants' Motion for Hearing **(D.E. No. 132)** is DENIED AS MOOT.

## INTRODUCTION

There are four initial plaintiffs in this case, three of whom are dentists practicing in Illinois, Nebraska and Maryland, respectively.  The American Dental Association (ADA), a non-profit dental association headquartered in Chicago, also asserts representational standing on behalf of its members, many of whom purportedly are potential class members.

The current Plaintiffs allege, on behalf of themselves and a putative class of similarly-situated dentists, that the Defendants "engaged in a systematic, fraudulent scheme to diminish payments to Class Plaintiffs through automatic downcoding, Current Dental Terminology ('CDT') code manipulation and improper bundling."  Second Amended Complaint ¶3 **(D.E. No. 111)**.  The Plaintiffs assert violation of the Racketeer Influenced and Corrupt Organization Act (RICO), breach of contract, and tortious interference with contractual relations and existing and prospective business expectations.

The Defendants, Cigna Corporation, Connecticut General Life Insurance Company, Cigna Dental Health, Inc., MetLife Inc. and Metropolitan Life Insurance Company, filed their Motion to Dismiss the Second Amended Class Action Complaint on June 6, 2008.  The Defendants argue that the Plaintiffs' RICO claims warrant dismissal for the same reasons this Court recently dismissed the *Solomon* case.  They contend that the Plaintiffs alleged neither a RICO conspiracy nor the predicate acts of a RICO violation (in this case mail and wire fraud) with adequate particularity.  For similar reasons, they also argue the Plaintiffs' tortious interference claims fail.

The Plaintiffs filed a Response on July 14, 2008 **(D.E. No. 129)**.  They distinguish this case from *Solomon* by countering that they plead sufficiently particular facts in the Second Amended

Complaint.

The Defendants Replied on August 1, 2008 **(D.E. No. 131)** and concomitantly filed a Request for Oral Argument on that same date **(D.E. No. 132)**.   The original Motion to Dismiss is thus ripe for adjudication.

## ANALYSIS

The Plaintiffs' Second Amended Complaint raises six counts.   Counts I through IV assert RICO violations.   Count V alleges breach of contract, and Count VI alleges tortious interference with a contract or business expectancy.   The Defendants have moved to dismiss Counts I through IV and Count VI, but have not moved to dismiss Count V.

The RICO allegations in the Second Amended Complaint mirror claims previously dismissed by this Court as part of the ongoing *In re: Managed Care* litigation.   Because they fail to allege RICO violations with adequate particularity, they warrant dismissal.   Similarly, the Plaintiffs' tortious interference claims warrant dismissal, because the Second Amended Complaint fails to set forth facts that plausibly indicate the Defendants tortiously interfered with the relationships between the Plaintiffs and their patients.

The Court properly exercises its discretion to maintain supplemental jurisdiction over the breach of contract claim.   Concerns with consistency and judicial economy counsel strongly against dismissing Count V for lack of jurisdiction.   However, as Judge Jordan has already ruled, the ADA may not seek monetary relief on behalf of its members under Count V.

## I.  RICO Claims

The Plaintiffs' RICO allegations mirror claims previously dismissed by this Court as part of the ongoing *In re: Managed Care* litigation.   As such, they suffer from the same defects as those

claims: they fail to allege RICO violations with adequate particularity, and thus warrant dismissal.

The Supreme Court in *Twombly* explicitly retired the pleading standard for motions to dismiss set in *Conely v. Gibson*, 355 U.S. 41 (1957). *Bell Atlantic Corp. V. Twombly*, 127 S.Ct. 1955, 1965 (2007). *Twombly* adopted a flexible "plausibility" standard under which a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level...on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 1965. *Twombly* requires that a complaint must allege a claim that is "plausible on its face." *Id*. at 1974. *See also*, *Young Apartments, Inc. v. Town of Jupiter, FL*, 529 F.3d 1027 (11th Cir. 2008) (A motion to dismiss "only requires that the plaintiff's factual allegations, when assumed to be true, must be enough to raise a right to relief above a speculative level") (internal citations omitted); *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1303 (11th Cir. 2008).

In *Solomon*, this Court dismissed a plaintiff's RICO cause of action because the plaintiff failed to allege either fraud or conspiracy with adequate specificity, as required by *Twombly*. *Solomon et al. v. Blue Cross and Blue Shield Association, et al.*, 574 F.Supp.2d 1288 (S.D. Fla., 2008). This Court also found that similar RICO allegations failed the *Twombly* standard in *Genord v. Blue Cross and Blue Shield of Michigan*, 07cv21688, 2008 WL 5070149 (S.D. Fla. Nov. 24, 2008). The Defendants assert that the Plaintiffs' claims here also fail the *Twombly* pleading requirements.

The Plaintiffs have alleged four RICO counts: violations of RICO under 18 U.S.C. §§1962(a), (c) and (d); and violations of 18 U.S.C. §2 by seeking to aid and abet, and aiding and abetting in violation of 18 U.S.C. §1962(c).

The Defendants analogize the RICO claims to the claims recently dismissed in *Solomon*.

-4-

According to the Defendants, in *Solomon* this Court "dismissed similar RICO claims brought by non-physician medical providers, who, like the dentists here, did little more than copy the allegations" from the original physicians complaint in the *In re: Managed Care* litigation. Motion to Dismiss at 3. The Plaintiffs counter that their case "is unlike *Solomon*," and that they properly alleged RICO violations. Response to Motion to Dismiss at 8.

In most relevant respects, the Plaintiffs' claims differ little from those in *Solomon* or *Genord*. Accordingly, and as more fully explained below, the Court GRANTS the Motion to Dismiss as to Counts I through IV.

### A. Predicate Acts of a Pattern of Racketeering Activity under 18 U.S.C. §1962(c)

In *Solomon*, the Court granted a Motion to Dismiss as to violations of 18 U.S.C. §1962(c), because the plaintiffs in that case failed to plead fraud with particularity, as required by FED R. CIV. P. 9(b). Unlike in *Solomon*, the Plaintiffs here describe six specific communiqués from the Defendants which they characterize as examples of fraud. These communiqués allegedly constituted fraud because they indicated the Defendants bundled submitted claims, resulting in lower benefits remuneration than if the underlying claims had been treated as separate procedures. Second Amended Complaint, ¶49. In other words, the Plaintiffs allege that the Defendants sent letters and emails to them, indicating benefits payments lower than the Plaintiffs believed were due to them. The Plaintiffs believed they had performed multiple procedures worthy of multiple (i.e., larger) benefits payments, while the Defendants bundled those procedures into fewer claims worthy of smaller payments. The Plaintiffs conclude that these letters and emails constituted mail or wire fraud.

Section 1962(c) requires that a plaintiff prove that a defendant participated in an illegal

enterprise "through a pattern of racketeering activity." Thus, simply specifying particular dates and contents of communications cannot automatically constitute a valid claim that a defendant violated 18 U.S.C. §1962(c). Rather, in order to prove a pattern of racketeering, a plaintiff must show at least two racketeering predicates that are related, and that they amount to or pose a threat of continued criminal activity. *H.J. Inc. v. Northwestern Bell Telephone Co.*, 109 S.Ct. 2893, 2899 (1989). "Continuity" is established for purposes of a RICO pattern where the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes. *Id.*

The Plaintiffs allege that the Defendants sent letters and emails indicating that dental procedures submitted as multiple claims would be grouped together as a single procedure for the purposes of benefits payment. *See* Second Amended Complaint, ¶¶49-56. The Plaintiffs contend those rejections as symptomatic of a larger scheme to inappropriately bundle dental procedures under false pretense. *Id.*

In sum, the Plaintiffs present the Court with examples of communications from the Defendants related to benefits payments. Those benefits payments were evidently lower than the Plaintiffs believed they were owed. Thus, the Plaintiffs call those communications fraudulent. Tellingly, however, the Second Amended Complaint never connects the allegedly fraudulent communications to the *specific* bundling of any *clearly distinct* claims. It merely asks the Court to draw the inference that, because the Plaintiffs think they deserved more money, communications indicating the amount the Defendants actually paid them constituted fraud.

These allegations fail to set forth a violation of §1962(c) that is "plausible on its face" because they do not raise a right to relief "above a speculative level." *Twombly*, 127 S. Ct. at 1965, 1974. A properly pled complaint must include more than "labels and conclusions." *Id.* at 1964-65.

In particular, the Plaintiffs here failed to plead that the Defendants bundled claims in connection with a plausible long-term criminal enterprise.  The Plaintiffs simply alleged *a priori* that the Defendants hatched a plan to fraudulently bundle claims, and then labeled letters and emails related to claims as "fraud" connected to that plan.

Because the Plaintiffs have failed to make out a plausible claim that the Defendant's communications regarding its new claims procedures were fraudulent, the Court GRANTS the Motion to Dismiss as to §1962(c) without prejudice.

### B.  Conspiracy under 18 U.S.C. §1962(d)

Section 1962(d) makes it illegal for anyone to *conspire* to violate RICO.  The Plaintiffs' conspiracy allegations mirror the conspiracy allegations in *Solomon*.  The Second Amended Complaint does not contain sufficient factual allegations about the Defendants agreeing with other entities and/or persons to engage in the ongoing criminal conduct of an enterprise.  The Plaintiffs' conspiracy allegations therefore fail under the new *Twombly* standard.  The Court thus GRANTS the Motion to Dismiss as to §1962(d) and dismisses without prejudice.

### C.  Violation of 18 U.S.C. §2 by Seeking to Aid and Abet, and Aiding and Abetting in the Violation of 18 U.S.C. §1962(c).

18 U.S.C. §2 establishes liability for co-conspirators who either seek to aid and abet, or do aid and abet in the violation of federal law.  The Plaintiffs contend that the Defendants' alleged RICO violations fall under this conspiracy statute.  In particular, they allege that a conspiracy existed to violate 18 U.S.C. §1962(c), and this conspiracy also establishes liability under 18 U.S.C. §2.  Nevertheless, for the same reasons that it grants the Motion to Dismiss as to §1962(c), the Court also GRANTS the Motion to Dismiss as to 18 U.S.C. §2 and dismisses without prejudice.

D.  Declaratory and Injunctive Relief Under 18 U.S.C. §1964(a)

Section 1964(a) provides the district courts jurisdiction to prevent and restrain RICO violations through injunctive relief.  Therefore, because the Court grants the Motion to Dismiss as to §§1962(c) and (d), it also GRANTS the Motion to Dismiss as to §1964(a) and dismiss without prejudice.

II.  Contract Claims

In addition to RICO allegations, the Second Amended Complaint sets forth related contract claims.  The Defendants have chosen not to attack the Plaintiffs' breach of contract claim under Count V.  This claim therefore survives the Motion to Dismiss, and the Court properly exercises its discretionary supplemental jurisdiction over this claim.  Moreover, as Judge Jordan has already determined, the ADA may not pursue monetary relief on behalf of its members under this claim.

The Plaintiffs also bring a claim for tortious interference under Count VI.  This claim suffers from similar defects in plausibility as the Plaintiffs' RICO allegations.  As set forth below, Count VI warrants dismissal.

A.  Representational Standing of ADA

This case was originally before Judge Adalberto Jordan.  In his March 28, 2005 Order on Motions to Dismiss **(D.E. No. 67)** Judge Jordan indicated his concerns about the ADA's standing to pursue its claims, but declined to jettison it from the suit at the motion to dismiss stage.  However, he also noted that the ADA had waived its right to monetary relief, and declined to answer whether an association has standing to obtain damages on behalf of its members.

Similarly, recently this Court preliminarily found the ADA had standing to sue on behalf of its members in *American Dental Association, et al. v. WellPoint Health Networks, Inc., et al.*,

02cv22027, D.E. No. 52 (January 29, 2009) ("*WellPoint Order*").  At the motion to dismiss stage, the Court found insufficient facts to doubt the ADA's ability to prove its claims without the individual participation of members, as required by *Hunt v. Washington State Apple Advertising Commission*.  432 U.S. 333, 343 (1977).  Nevertheless, the Court cautioned that it could review standing at a later stage.  *WellPoint Order* at 2-3.

More importantly, the Court held that the ADA lacked standing to assert direct claims on its own behalf, and restricted its standing to declaratory relief sought on behalf of its members.  *Id.* at 2-3.  This partly stemmed from the fact that the only remaining claims were ERISA claims, which the ADA lacked standing to bring under 29 U.S.C. §1132(a)(1)(B), since it qualified neither as a participant nor a beneficiary under the contested plan in that case.

Judge Jordan did not find the contract claims in this case preempted by ERISA, but his holding regarding the ADA's standing otherwise mirrors this Court's ruling in *WellPoint*.  Thus, consistent with one another, the ruling in *WellPoint* and Judge Jordan's ruling in this case restricted the ADA to injunctive relief.  Morever, just as in *WellPoint*, the Court notes that it may revisit the ADA's standing at a later date, should its claims require individualized participation from ADA members.

B.  Jurisdiction

The Court has discretion whether to exercise supplemental jurisdiction over the Plaintiffs' state law claims.  Because these claims involve questions of fact and law similar to those in other cases in the *In re: Managed Care Litigation*, the Court properly exercises that supplemental jurisdiction.

The Second Amended Complaint alleged federal question jurisdiction under 28 U.S.C.

§1331, and invoked supplemental jurisdiction over state law contract claims under 28 U.S.C. §1367. Because the Court dismisses all of the RICO counts, only state law claims remain.  28 U.S.C. §1367(c)(2) contemplates just such a scenario, and provides the district courts discretion whether to continue exercising supplemental jurisdiction.

This case involves common questions of law and fact with the other cases involved in the *In Re: Managed Care Litigation*.  Thus, concerns over judicial economy and consistency argue strongly in favor of exercising supplemental jurisdiction.  In view of this, the Court exercises supplemental jurisdiction over the Plaintiffs contract claim under Count V.

C.  Tortious Interference with Contractual Relations and Existing and Prospective Business Expectations

The Plaintiffs' tortious interference claims warrant dismissal.  The Second Amended Complaint fails to set forth facts that plausibly indicate the Defendants tortiously interfered with the relationships between the Plaintiffs and their patients.  Absent the plausibility of such behavior, these causes of action cannot proceed.

The Defendants and Plaintiffs concede that the Court may assume Illinois, Nebraska and Maryland law govern the Plaintiffs' state law claims at the motion to dismiss stage, because these are the states where the Plaintiffs "allege that they practice and where they allege they were injured." Motion to Dismiss at 21, n. 19; *see also* Response to Motion to Dismiss at 23.  Similar basic elements establish the torts in question for all three states.  Thus, the Court will evaluate the sufficiency of the Plaintiffs' claims according to those elements, and the pleading standard announced in *Twombly*.

Although closely related, tortious interference with either a contract, or a business

expectancy, constitute two distinct causes of action.  A plaintiff who brings a claim for intentional interference with a business expectancy must allege "(1) a reasonable expectancy of entering into a valid business relationship; (2) the defendant's knowledge of the expectancy; (3) the defendant's intentional and unjustified interference that prevents the realization of the business expectancy; and (4) damages resulting from the interference."  *Chicago's Pizza, Inc v. Chicago's Pizza Franchise Ltd. USA*, 893 N.E.2d 981, 993 (Ill. App. 1 Dist. 2008); *see also*, *Huff v. Swartz*, 606 N.W.2d 461, 466 (Neb. 2000).  Tortious interference with a contract, on the other hand, requires that a plaintiff render proof that a defendant interfered with a valid existing contract, and not just the expectancy of a relationship.  *Kramer v. Mayor and City Council of Baltimore*, 723 A.2d 529, 539 (Md. App. 1999); *see also*, *The Film and Tape Works, Inc. v. Junetwenty Films, Inc.*, 856 N.E.2d 612, 618 (Ill. App. 1 Dist. 2006); *Vande Guchte v. Kort*, 703 N.W.2d 611, 623 (Neb. App. 2005).

Nevertheless, it is of no moment whether the Plaintiffs stated a single, or two distinct causes of action in Count VI of the Second Amended Complaint.  The gravamen of any tortious interference claim is precisely the malicious interference with a third-party business relationship.  The third element of either tortious interference cause captures this important point.  In this case, the Plaintiffs simply haven't alleged facts that plausibly indicate such malicious conduct, and their claims therefore should not proceed.

The factual insufficiency underlying Count VI begins with the allegedly wrongful communications related to benefits payments.  Just as with their fraud claims, the Plaintiffs ask the Court to draw the inference that, because they think they deserved more money, communications indicating the amount the Defendants actually paid constituted toritous interference.  Moreover, the Plaintiffs fail to indicate how these communications directly contributed to patients seeking dental

services elsewhere.  Without that crucial logical connection, the Court finds itself unable to impute malicious, tortious motives to the Defendants' benefits determinations.

Beyond the benefits explanations, the Second Amended Complaint also alleges unwarranted payment delays.  Second Amended Complaint, ¶¶ 57-60.  These delays allegedly resulted from automated programs that "pend" claims even though no additional information is needed, and from the calculated "understaffing" of claims processing departments.  *Id*.  The Second Amended Complaint, however, fails to connect these assertions to the termination of any patient relationships. Absent that connection, the Court cannot view the Plaintiffs allegations as anything other than "labels and conclusions" that fail to raise a right to relief "above a speculative level." *Twombly*, 127 S. Ct. at 1965, 1974.

Consequently, the Court GRANTS the Motion to Dismiss as to Count VI, and dismisses without prejudice.  Because the Second Amended Complaint fails to set forth facts that plausibly indicate the Defendants tortiously interfered with the relationships between the Plaintiffs and their patients, these causes of action warrant dismissal.

## **CONCLUSION**

The Defendants' Motion to Dismiss is GRANTED.  The Plaintiffs have failed to make out plausible claims that the Defendants engaged in a pattern of racketeering through fraudulent communications regarding the bundling of claims.  The Plaintiffs have also failed to make out plausible claims that the Defendants tortiously interfered with Dentist-patient relationships.

Counts I through IV and Count VI of the Second Amended Complaint are hereby DISMISSED without prejudice to refile in conformance with this Order by February 26, 2009. In particular, the Plantiffs' RICO and tortious interference allegations must conform with the

pleading requirements announced in *Twombly* and applied by this Court in *Solomon* and *Genord*. If the Plaintiffs fail to submit an Amended Complaint by February 26, 2009, Counts I through IV and Count VI will be dismissed with prejudice.

The Plaintiffs are cautioned, moreover, that "[l]eave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant." *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007). Thus, if the Plaintiffs elect to amend the dismissed claims in a manner that fails to satisfy the controlling pleading requirements, the Court shall dismiss those claims with prejudice.

DONE AND ORDERED in Chambers at Miami, Florida, this 10th day of February, 2009.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:
Counsel of Record